UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRED WILSON,<br><br>    Plaintiff,<br><br>v.<br><br>ROBERT FOX, et al.,<br><br>    Defendants. | No. 2:16-cv-0219 JAM AC P<br><br><br>FINDINGS AND RECOMMENDATIONS |

This matter is before the court on a motion for summary judgment brought by the three remaining defendants: Doctors Saukhla, Sanders, and Osman. ECF No. 35. Plaintiff is a former prisoner appearing pro se. This matter was accordingly referred to the undersigned for pretrial proceedings by Local Rule 302(c)(21). Defendants' motion was scheduled for hearing on February 20, 2019. Robert Perkins appeared on behalf of defendants, and plaintiff failed to appear. ECF No. 44.

I.     Procedural History

Plaintiff brings this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The lawsuit was commenced on December 26, 2015, and plaintiff was released from prison shortly thereafter. ECF Nos. 1, 9. The original complaint was dismissed in part on screening with leave to amend. ECF No. 12. On screening of the operative First Amended Complaint, ECF No. 25, the undersigned recommended dismissal of all defendants other than Doctors Saukhla, Sanders, and

1

Osman, and all claims other than deliberate indifference to medical needs in violation of the Eighth Amendment. ECF No. 30. The district judge adopted the recommendation. ECF No. 32. The gravamen of plaintiff's remaining claim is that the defendant doctors failed to identify and treat plaintiff's atrial fibrillation while he was in custody.

The summary judgment motion has been fully briefed. ECF Nos. 35 (motion); 41 (plaintiff's opposition); 42 (defendants' reply).

II. Undisputed Facts

Unless otherwise specified, the following facts are either expressly undisputed by the parties or have been determined by the court, upon a full review of the record, to be undisputed by competent evidence.[1]

Plaintiff was an inmate at California Medical Facility (CMF) until he was released on parole in February 2016. Defendants' Statement of Undisputed Facts (DSUF) (ECF No. 35-3) ¶¶ 1, 5. Prior to incarceration, plaintiff had a primary care physician who he saw multiple times from 2007 until October 2011, and there is no documentation that he ever received a diagnosis of atrial fibrillations before his incarceration. DSUF ¶ 3. While at CMF, defendant Saukhla was plaintiff's primary care physician. DSUF ¶ 5. The following timeline sets forth the treatment plaintiff received at CMF related to his complaints of chest pain, beginning with his first complaint and continuing through his last appointment before being released on parole.

- November 24, 2014: During an appointment with Saukhla, plaintiff complained of sharp chest pains and was given an EKG. DSUF ¶ 6. His EKG was unchanged from his previous EKG and did not indicate any irregularities. Id. Saukhla did not believe that plaintiff's symptoms were consistent with a heart condition and decided to monitor plaintiff's complaints of pain. Id. Plaintiff's medical records further indicate that Saukhla obtained a release from plaintiff to allow him to obtain medical records related to plaintiff's cardiac catheterization and stent procedure and also discussed the risks and benefits of aspirin therapy for coronary artery

---

[1] As the court discusses more fully below, plaintiff ostensibly disputes a number of defendants' facts, but he fails to identify any potentially admissible evidence that would support finding a genuine dispute.

2

1 | disease prevention and renewed plaintiff's prescription. Feinberg Decl. (ECF No. 35-4) ¶ 9; ECF
2 | No. 35-4 at 17, 20-21.

- December 31, 2014: Saukhla saw plaintiff for a follow-up appointment and plaintiff made the same complaint about pain in his left chest. DSUF ¶ 7. Again, Saukhla determined that plaintiff's symptoms were not consistent with a heart condition. Id. Plaintiff's request for an MRI was denied because his symptoms did not necessitate one, but his request for an x-ray was granted.

- January 28, 2015: Saukhla saw plaintiff for a follow-up appointment to discuss the results of his January 6, 2015 x-ray, which was negative for cardiopulmonary disease. DSUF ¶¶ 8, 9. At the appointment, plaintiff complained of left chest pain and Saukhla examined his chest and pectoral areas but did not feel any lumps or masses. DSUF ¶ 9.

- March 10, 2015: Defendant Osman saw plaintiff for his complaints of chest wall pain and administered an EKG to determine if plaintiff's reported chest pain was related to any developing cardiac issue. DSUF ¶ 11. The EKG was unchanged from plaintiff's previous EKG and did not indicate any developing issues. Id. Therefore, Osman concluded that plaintiff's chest pain was not related to any heart condition. Id.

- March 17, 2015: Plaintiff saw Saukhla for a follow-up appointment and he complained of chest pains. DSUF ¶ 12. Plaintiff's vital signs were normal and his heart rate was regular. Id. Saukhla felt that plaintiff's history of coronary artery disease and atypical chest pains warranted further cardiac evaluation, and he completed a request for service form so that plaintiff could see a cardiologist for a cardiac stress test to determine if his chest pain was related to his heart. DSUF ¶¶ 12, 13.

- March 23, 2015: Plaintiff saw Osman for complaints of sharp, left-sided chest pain after going "man down," and had another EKG. DSUF ¶ 14; Feinberg Decl. ¶ 14. The results of the EKG were unchanged and did not indicate that plaintiff had a heart condition. DSUF ¶ 14. Osman determined that plaintiff's symptoms indicated the chest pain was not related to any heart condition. Id. Plaintiff's medical records further indicate that at the time, he reported having had the pain for almost a year and was provided aspirin for the pain, scheduled for a follow-up with

his primary care physician, and advised to return if the nature of his pain changed. Feinberg Decl. ¶ 14; ECF No. 35-4 at 30.

- March 31, 2015: Plaintiff was seen by defendant Sanders who administered an EKG after plaintiff complained that he had been experiencing intermittent sharp chest wall pain on his left side for over a year and that he was currently experiencing sharp chest pain at a level of 8 out of 10. DSUF ¶ 15; Feinberg Decl. ¶ 15; ECF No. 35-4 at 32. The EKG results were unchanged from his previous EKGs. DSUF ¶ 15. Sanders concluded that plaintiff's complaints were not consistent with an acute heart condition and administered Toradol for the pain. DSUF ¶¶ 15, 16. The Toradol reduced plaintiff's pain and Sanders concluded that plaintiff's chest pain was musculoskeletal and not related to a heart condition. Id.

- April 9, 2015: Plaintiff was seen by Osman for complaints of parasternal and rib cage area pain and an EKG was performed. DSUF ¶ 17; Feinberg Decl. ¶ 16; ECF No. 35-4 at 34. The EKG indicated a normal sinus rhythm with no acute changes and Dr. Osman concluded plaintiff was experiencing musculoskeletal chest wall pain. DSUF ¶ 17. Plaintiff's medical records reflect that he requested an MRI, which was denied as not indicated; that there was no evidence of acute coronary syndrome, pulmonary embolism, or pneumonia; and that he was to follow up with his primary care physician the following week as scheduled. Feinberg Decl. ¶ 16; ECF No. 35-4 at 34.

- April 13, 2015: Plaintiff was seen by Saukhla for a follow-up and made the same complaint of chest pains and another request for an MRI. DSUF ¶ 18. He stated that the pain lasted from a few seconds to all day. Feinberg Decl. ¶ 17; ECF No. 65-4 at 36. His heart rate and rhythm were regular and he was advised that an MRI was not indicated because his symptoms were consistent with musculoskeletal chest wall pain. DSUF ¶ 18; Feinberg Decl. ¶ 17; ECF No. 65-4 at 36. Saukhla noted that plaintiff was still awaiting scheduling on the cardiology referral for a stress test. Feinberg Decl. ¶ 17; ECF No. 65-4 at 36.

- May 29, 2015: Plaintiff had his cardiac stress test. The results were normal and did not reveal any cardiac rhythm abnormalities. DSUF ¶ 19.

- June 12, 2015: Plaintiff had a follow-up appointment with Saukhla, and again reported that he felt chest pains. DSUF ¶ 20. Saukhla concluded, based on the results of the stress test and plaintiff's symptoms, that plaintiff's chest pain was not related to a heart condition. Id. Saukhla gave plaintiff a trial of Zantac, due to plaintiff's complaint that the pain sometimes went into the epigastric area. Id.

- July 10, 2015:[2] Plaintiff saw Osman after going "man down," and complained of dizziness but did not report chest pains. DSUF ¶ 21; Feinberg Decl. ¶ 21; ECF No. 35-4 at 41. Osman took plaintiff's vital signs, which were normal, and performed an EKG, which was also normal and unchanged from previous EKGs. Feinberg Decl. ¶ 21; ECF No. 35-4 at 41. Plaintiff was instructed to not take terazosin for one week and to follow up with Saukhla. DSUF ¶ 21.

- July 22, 2015: During a follow-up appointment, Saukhla decided to switch plaintiff from terazosin to Flomax. DSUF ¶ 22. Plaintiff's vital signs, including heart rate and rhythm, were normal. Id.; Feinberg Decl. ¶ 22; ECF No. 35-4 at 43.

- October 28, 2015: Plaintiff had a follow-up appointment with Saukhla on another matter and reported no chest pain and his heart rate and rhythm were normal. DSUF ¶ 23; Feinberg Decl. ¶ 23; ECF No. 35-4 at 44.

- December 16, 2015: Plaintiff saw Saukhla for a chronic care visit during which they discussed his chest pains. DSUF ¶ 24; Feinberg Decl. ¶ 24; ECF No. 35-4 at 45. Plaintiff described his chest pains as sharp and lasting a few seconds with no shortness of breath. Feinberg Decl. ¶ 24; ECF No. 35-4 at 45. Plaintiff asked for pain medications and Saukhla provided Tylenol as needed. DSUF ¶ 24. Saukhla concluded that plaintiff's chest pain was non-specific but not cardiac in nature. Id. Plaintiff's records indicate that he once again requested an MRI, and that the request was discussed at length but does not appear to have been granted. Feinberg Decl. ¶ 24; ECF No. 35-4 at 45.

---

[2] Although defendants' statement of facts says this interaction occurred on July 20, 2015, this appears to be a typographical error as the records relied upon reflect that the exam took place on July 10, 2015.

- February 4, 2016: Saukhla had his last appointment with plaintiff and noted that plaintiff would parole later that month. DSUF ¶ 25; Feinberg Decl. ¶ 25; ECF No. 35-4 at 46. Plaintiff again complained of sharp pain in the left side of his chest wall that lasted for a few seconds before going away. Feinberg Decl. ¶ 25; ECF No. 35-4 at 46. Saukhla concluded that plaintiff's pain was musculoskeletal, rather than cardiac or pulmonary, in nature. DSUF ¶ 25; Feinberg Decl. ¶ 25; ECF No. 35-4 at 46.

- December 27, 2016: Plaintiff was diagnosed with atrial fibrillations. DSUF ¶ 27.

III. Analysis

A. Standard on Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. In such

a circumstance, summary judgment should "be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" Id. Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Cent. Costa Cnty. Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations

omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

B. Eighth Amendment – Deliberate Indifference

In order to state a §1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendant possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 5 (1992) (citation omitted).

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting Estelle, 429 U.S. at 104), overruled on other grounds WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted). A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989) (citations omitted); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (citation omitted). To establish that a difference of opinion rises to the level of deliberate indifference, plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citation omitted).

C. Defendants Have Met Their Initial Burden Under Rule 56

Defendants contend that plaintiff has failed to show they acted with deliberate indifference. They rely on the records of plaintiff's medical care at CMF to argue that he

8

received timely and appropriate medical care, and that his complaints of chest pain were not ignored. They point to the absence of any documentation that plaintiff had been diagnosed with atrial fibrillation prior to incarceration, together with repeated normal test results at CMF, to demonstrate that they had no reason to suspect atrial fibrillation. And they point to plaintiff's inability at his deposition to identify facts indicating an intentional failure by defendants to provide necessary treatment, and plaintiff's failure to identify any harm from defendants' alleged omissions. ECF No. 35-2 at 7-10.

The undisputed facts demonstrate that plaintiff was seen regularly by medical staff at CMF, that the defendant doctors responded to his complaints of chest pain, that diagnostic procedures were undertaken, that the defendants concluded plaintiff did not suffer from a cardiac condition, and that plaintiff's pain was treated. See supra at pp. 2-6. Even if the doctors were incorrect in their conclusions and even if their treatment choices were wrong, plaintiff cannot establish a violation of his Eighth Amendment rights without evidence that the doctors acted with knowledge of a serious risk to plaintiff's health and with a culpable state of mind. See Jett, 439 F.3d at 1096. Plaintiff must also be able to prove harm caused by the deliberate indifference. Id. The medical records contain no direct or circumstantial evidence of deliberate indifference or harm.

The moving parties have thus identified a failure of proof on essential elements of plaintiff's claim. Accordingly, they have satisfied their initial burden under Celotex, 477 U.S. at 322-23. The burden accordingly shifts to plaintiff to demonstrate the existence of a genuine issue of material fact. Matsushita, 475 U.S. at 586-87.

### D. Plaintiff Has Failed to Identify a Triable Issue of Material Fact

In his effort to identify factual disputes, plaintiff repeatedly states that "a proper Doctor from outside of the Prison would have detected Plaintiff's A-Fib problem" and cites to paragraph four of his own declaration. Response to Defendants' Statement of Undisputed Facts (ECF. No. 41-2) ¶¶ 4, 6-9, 11-12, 14-25, 28-30. Paragraph four of plaintiff's declaration states as follows:

> On January 15, 2019, I again saw Ramanna Merla, M.D., who is the Doctor who diagnosed me with my A-Fib heart problem after I got out on parole. He gave me his doctor's note stating that I have A-

9

> Fib, which is attached as Exhibit "A", and incorporated herein by reference. I talked to him about the diagnosis that day, and he told me that if the right procedure would have been taken, my heart problem could have been detected earlier, and no X-ray would have detected this problem. Dr. Merla stated to me that I suffer from A-Fib and lung disease. I also waned him to give me a Declaration stating what he told me. He said "that would be illegal". Illegal my rear end. He made that statement probably because he wanted "expert witness fees" for making such a Declaration when he personally examined me. If this Motion is denied, I will have somebody serve Dr. Merla for Trial.

ECF No. 41-1 at 2.

Rule 56(c)(4) of the Federal Rules of Civil Procedure states that affidavits and declarations submitted for or against a summary-judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." In other words, only admissible evidence may be considered by the court. Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988) (citations oimitted). "In general, inadmissible hearsay evidence may not be considered on a motion for summary judgment." Anheuser-Busch, Inc. v. Nat. Beverage Distribs., 69 F.3d 337, 345 n.4 (9th Cir. 1995) (citation omitted); Courtney v. Canyon Television & Appliance Rental, Inc., 899 F.2d 845, 851 (9th Cir. 1990); Fong v. Am. Airlines, Inc., 626 F.2d 759, 763 (9th Cir. 1980). Statements in affidavits that are legal conclusions, speculative assertion, or statements of hearsay evidence do not satisfy the standards of personal knowledge, admissibility, and competence required by Rule 56(c)(4). Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citations omitted). For these reasons, the court may not consider the hearsay statements attributed to Dr. Merla in plaintiff's declaration,[3] or plaintiff's own speculation that "a proper Doctor" would have identified his condition while he was in prison.

Even if accepted as an offer of proof, the declaration regarding Dr. Merla's statements does not defeat summary judgment. At most, the statements attributed to Dr. Merla suggest the possibility of a disagreement among doctors, or the possibility of negligence by prison doctors. Neither negligence nor medical malpractice rises to the level of an Eighth Amendment violation.

---

[3] Although plaintiff attests under penalty of perjury to what Dr. Merla allegedly said, the statements are hearsay and do not fall under any of the exceptions. See Fed. R. Evid. 801-804.

Estelle, 429 U.S. at 106. Disagreement among doctors is also insufficient to create a triable Eighth Amendment claim. Toguchi, 391 F.3d at 1058. Accordingly, even if Dr. Merla or another doctor testified that plaintiff's atrial fibrillation could or should have been identified earlier, plaintiff would not be able to prevail on that basis.

Plaintiff's evidence that he was diagnosed with atrial fibrillation *after* release from prison does not support a conclusion that his condition during incarceration was such that the failure to diagnose it earlier was negligent, let alone deliberately indifferent. Most importantly, plaintiff has not identified any evidence that would permit a jury to find that the defendants knew at the time they were treating plaintiff that he was placed at serious risk of harm by their failure to conduct different diagnostic tests or pursue a different course of treatment. Plaintiff asserts in his opposition brief that defendants "hoped that Plaintiff would have died and shorten the numbers of prisoners in the overcrowded State Prison System." ECF No. 41 at 2. Plaintiff identifies no direct or circumstantial evidence of defendants' state of mind, however. Without admissible evidence from which a jury could conclude that defendants' state of mind was deliberately indifferent to a known medical risk, plaintiff has not demonstrated the existence of a triable factual dispute as to intent.

On the issue of harm, plaintiff asserts without evidence that he would have died if he had remained in prison with an undiagnosed cardiac condition. See ECF No. 41 at 1, 6. Plaintiff's assertions do not substitute for admissible evidence of the risk that existed at the time of his treatment by defendants, or of harm caused by their alleged failure to identify an underlying heart condition. Plaintiff cannot rely on his own speculative assessment of potential medical consequences, as he acknowledges that he has no medical training (Response to DSUF ¶ 2).

To the extent plaintiff contends that he suffered unnecessary pain due to defendants' failure to correctly diagnose and treat him, his records show that he received aspirin both for coronary artery disease prevention and for pain (Feinberg Decl. ¶¶ 9, 14; ECF No. 35-4 at 17, 20-21, 30); a Toradol shot when he presented to Sanders in severe pain (DSUF ¶¶ 15-16; Feinberg Decl. ¶ 15; ECF No. 35-4 at 32); a trial of Zantac when it appeared that his pain might be due to gastritis (DSUF ¶ 20); and a prescription for Tylenol when he requested pain medication (DSUF ¶

24). There is no evidence before the court from which a trier of fact could conclude that the pain plaintiff experienced in CMF was caused by defendants' acts and omissions, such that it could constitute harm, or that the treatment of his pain was itself deliberately indifferent.

For all these reasons, plaintiff has failed to demonstrate the existence of a triable issue of fact regarding defendants' state of mind or regarding harm caused by their actions. Because the record reflects a failure of proof on essential elements of plaintiff's claim, defendants are entitled to summary judgment.

### E. Qualified Immunity

Defendants seek summary judgment on the alternative ground that they are entitled to qualified immunity. ECF No. 35-2 at 10-12. Because the court finds no triable issue as to deliberate indifference, it declines to reach the issue of qualified immunity.

### IV. Plain Language Summary for a Pro Se Litigant

It is being recommended that the motion for summary judgment be granted because you have not provided evidence that defendants were aware that you had a serious medical need and failed to provide treatment with the knowledge that this put you at risk. At most, you have shown that they may have been negligent, which is not enough to support a claim under the Eighth Amendment.

## CONCLUSION

For the reasons explained above, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 35) be GRANTED, and judgment be entered in favor of the defendants.

2. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 7, 2019

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE